UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
WHITE PLAINS COURTHOUSE

| | |
|---|---|
| Lonise Singo, individually and on behalf of all others similarly situated, | 7:22-cv-10369 |
| Plaintiff, | |
| - against - | Class Action Complaint |
| Ricola USA, Inc., | Jury Trial Demanded |
| Defendant | |

Plaintiff alleges upon information and belief, except for allegations about Plaintiff, which are based on personal knowledge:

1. Ricola USA, Inc. ("Defendant") manufactures, labels and sells throat drops based on "Green Tea With Echinacea" with a large pink echinacea flower next to a green lozenge ("Product").



**I.      DEMAND FOR OTC PRODUCTS WITH BOTANICAL INGREDIENTS**

2. Recent studies show consumers are increasingly purchasing over-the-counter ("OTC") drugs containing botanical, or plant-based ingredients to provide relief for coughs and colds.[1]

3. Two of the most popular of these ingredients are echinacea, the pink flower pictured below and on the front label, and green tea.



4. The reasons for this shift are several.

5. First, according to one survey, almost 40% of respondents said traditional OTC products posed safety risks and could cause unwanted side effects.

6. Second, almost 60% believed botanical ingredients are equally, if not more effective, in treating coughs and colds compared to traditional ingredients.

7. According to consumer research by Mintel, consumers actively use the internet to

---

[1] Vicki Brower, "A nutraceutical a day may keep the doctor away: Consumers are turning increasingly to food supplements to improve well-being when pharmaceuticals fail." EMBO reports 6.8 (2005): 708-711.

2

look up their symptoms, self-diagnose and see what non-medicinal options are available.

8. These searches typically lead to health and wellness websites promoting the benefits of these botanicals.

9. Often, there are kernels of truth behind such claims, based on studies purporting to show how green tea catechins and echinacea can alleviate symptoms associated with upper respiratory infections such as coughs.[2]

10. Third, purchasers are attracted to products based on botanical ingredients because they are seeking to avoid chemical and synthetic ingredients.

11. Echinacea is also popular due to its association with wellness for hundreds of years, in the form of the pink flower on the front label.

12. Fourth, many OTC purchasers believe traditional products merely suppress symptoms, while botanical ingredients like echinacea and green tea have been used by indigenous societies for hundreds of years and work in concert with the body's healing mechanisms.

**II. NEITHER ECHINACEA OR GREEN TEA IS AN ACTIVE INGREDIENT**

13. When consumers see the front label statement, "Green Tea With Echinacea," the prominent pink echinacea flower and the green lozenge, they will expect the Product achieves its cough suppression and soothing effects from these components.

14. Neither echinacea and green tea is responsible for the Product's cough suppressant abilities, disclosed on the back panel Drug Facts which identify the active ingredient as menthol.

---

[2] Nicola Gordon-Seymour, Green tea daily wards off influenza and other respiratory viruses, say researchers, Beverage Daily, Jan. 18, 2022; The Well, The Best Foods To Eat When You're Sick, Northwell Health; Abby Moore, Echinacea: Health Benefits, Uses, Risks & How To Take It, Mind Body Green, Sept. 16, 2020; Inga de Jong, Heroing botanicals: Consumers champion natural extracts and herbal remedies, Food Ingredients First, Sept. 28, 2022; Echinacea and Matcha Tea, Republic of Tea, May 10, 2016.



*Active Ingredients (in each drop)*                                    *Purposes*
Menthol, 4.1 mg …………..…...Cough suppressant, Oral anesthetic

15.  Echinacea and green tea are listed in the inactive ingredients, which is a tacit acknowledgement they have no connection to the Product's function.

**Inactive Ingredients** aspartame, citric acid, extracts of echinacea, green tea, peppermint and a Ricola herb mixture (elder, horehound, hyssop, lemon balm, linden flowers, mallow, peppermint, sage, thyme, wild thyme), isomalt, natural color (chlorophyll), natural flavors, sorbitol.

16.  The representations are misleading because they capitalize on mistaken consumer beliefs that echinacea and green tea are capable of having the therapeutic effects indicated, when this is false.

17.  No credible evidence supports a connection between botanical ingredients like echinacea and green tea and alleviating symptoms of upper respiratory infections such as coughs.

18.  Though the front label is required to contain a statement of identity consisting of the established name of the drug and its pharmacological category, "Cough Suppressant – Throat Drops" only provides the latter. 21 C.F.R. § 341.74(a).

19.  While "Throat Drops" are the form of the drug, this is not its established name of menthol lozenge. 21 C.F.R. § 341.74(a)

20. The FDA recommends that the strength of an OTC product's active ingredient immediately follow the statement of identity and offers the following example "[Established Name] [Pharmacological Category] [Strength]."

21. Applying this principle, the label should read "Menthol Lozenge – Cough Suppressant – 4.1 mg," or some close variation thereof.

22. Out of the dozens of companies selling menthol lozenges as cough suppressants, Defendant's labeling is perhaps the only one which fails to disclose menthol on its front label.

23. The result is that consumers will expect that unlike competitors, its cough suppressant properties are from the botanical ingredients indicated, such as echinacea and green tea, when this would be false.

### III. CONCLUSION

24. The Product contains other representations and omissions which are false and misleading, including the claim of "soothing relief," because it is not a demulcent.

25. As a result of the false and misleading representations, the Product is sold at a premium price, approximately no less than $4.89 for 19 lozenges, excluding tax and sales.

Jurisdiction and Venue

26. Jurisdiction is based on the Class Action Fairness Act of 2005 ("CAFA"). 28 U.S.C. § 1332(d)(2).

27. The aggregate amount in controversy exceeds $5 million, including any statutory and punitive damages, exclusive of interest and costs.

28. Plaintiff is a citizen of New York.

29. Defendant is citizen of New Jersey because it is a New Jersey corporation with a principal place of business in Morris County, New Jersey.

30. The class of persons Plaintiff seeks to represent includes persons who are citizens of different states from which Defendant is a citizen.

31. The members of the class Plaintiff seeks to represent are more than 100, because the Product is sold with the representations described here in grocery stores, warehouse club stores, drug stores, convenience stores, big box stores, and online, in the States Plaintiff seeks to represent.

32. Venue is in this District with assignment to the White Plains Courthouse because a substantial part of the events or omissions giving rise to these claims occurred in Dutchess County, including Plaintiff's purchase, reliance on the identified statements, and subsequent awareness these were false and misleading.

Parties

33. Plaintiff Lonise Singo is a citizen of Poughkeepsie, Dutchess County, New York.

34. Defendant Ricola USA, Inc. is a New Jersey corporation with a principal place of business in Parsippany, Morris County, New Jersey.

35. Ricola is one of the most recognized sellers of lozenges in the world, founded almost a century ago in the shadow of the Swiss Alps.

36. The Swiss Alps is described as "nature's laboratory" due to the variety of plants and herbs which thrive in its rich soil.

37. Plaintiff purchased the Product at stores including Walmart, 26 W Merritt Blvd, Fishkill, NY 12524, between September 2021 and September 2022, and/or among other times.

38. Plaintiff saw the pictures of the botanical ingredients and read the front label and believed the Product functioned as a cough suppressant due to their presence.

39. Plaintiff bought the Product at or exceeding the above-referenced price.

40. Plaintiff paid more for the Product than she would have had she known the amount

6

of detergent was sufficient for roughly half of that number of loads of laundry, or would not have purchased it.

41. The value of the Product that Plaintiff purchased was materially less than its value as represented by Defendant.

42. Plaintiff chose between Defendant's Product and products represented similarly, but which did not misrepresent their attributes, requirements, features, and/or components.

## Class Allegations

43. Plaintiff seeks certification under Fed. R. Civ. P. 23 of the following classes:

> **New York Class:** All persons in the State of New York who purchased the Product during the statutes of limitations for each cause of action alleged; and
>
> **Consumer Fraud Multi-State Class**: All persons in the States of Texas, North Dakota, Wyoming, Idaho, Alaska, Iowa, Mississippi, Virginia, Arkansas, South Carolina, and Utah who purchased the Product during the statutes of limitations for each cause of action alleged.

44. Common questions of issues, law, and fact predominate and include whether Defendant's representations were and are misleading and if Plaintiff and class members are entitled to damages.

45. Plaintiff's claims and basis for relief are typical to other members because all were subjected to the same unfair, misleading, and deceptive representations, omissions, and actions.

46. Plaintiff is an adequate representative because her interests do not conflict with other members.

47. No individual inquiry is necessary since the focus is only on Defendant's practices and the class is definable and ascertainable.

48. Individual actions would risk inconsistent results, be repetitive and are impractical

to justify, as the claims are modest relative to the scope of the harm.

49. Plaintiff's counsel is competent and experienced in complex class action litigation and intends to protect class members' interests adequately and fairly.

### New York General Business Law ("GBL") §§ 349 and 350

50. Plaintiff incorporates by reference all preceding paragraphs.

51. Plaintiff saw and relied on the label to believe the Product's cough suppressant ability was based on the presence of the identified botanical ingredients, such as echinacea and green tea.

52. Plaintiff would not have purchased the Product or paid as much if the true facts had been known, suffering damages.

### Violation of State Consumer Fraud Acts
### (Consumer Fraud Multi-State Class)

53. The Consumer Fraud Acts of the States in the Consumer Fraud Multi-State Class are similar to the consumer protection statute invoked by Plaintiff and prohibit the use of unfair or deceptive business practices in the conduct of commerce.

54. The members of the Consumer Fraud Multi-State Class reserve their rights to assert their consumer protection claims under the Consumer Fraud Acts of the States they represent and/or the consumer protection statute invoked by Plaintiff.

55. Defendant intended that members of the Consumer Fraud Multi-State Class would rely upon its deceptive conduct, which they did, suffering damages.

### Breaches of Express Warranty,
### Implied Warranty of Merchantability/Fitness for a Particular Purpose
### and Magnuson Moss Warranty Act, 15 U.S.C. §§ 2301, *et seq.*

56. The Product was manufactured, identified, marketed, and sold by Defendant and expressly and impliedly warranted to Plaintiff that its cough suppressant ability was based on the presence of the identified botanical ingredients, such as echinacea and green tea.

57. Defendant directly marketed the Product to Plaintiff through its advertisements and marketing, through various forms of media, on the packaging, in print circulars, direct mail, product descriptions, and targeted digital advertising.

58. Defendant knew the product attributes that potential customers like Plaintiff were seeking and developed its marketing and labeling to directly meet their needs and desires, which was the use of natural, botanical ingredients for therapeutic benefits.

59. The representations about the Product were conveyed in writing and promised it would be defect-free, and Plaintiff understood this meant its cough suppressant ability was based on the presence of the identified botanical ingredients, such as echinacea and green tea.

60. Defendant's representations affirmed and promised that its cough suppressant ability was based on the presence of the identified botanical ingredients, such as echinacea and green tea.

61. Defendant described the Product so Plaintiff believed its cough suppressant ability was based on the presence of the identified botanical ingredients, such as echinacea and green tea, which became part of the basis of the bargain that it would conform to its affirmations and promises.

62. Defendant had a duty to disclose and/or provide non-deceptive descriptions and marketing of the Product.

63. This duty is based on Defendant's outsized role in the market for this type of Product, the recognized Ricola brand.

64. Plaintiff recently became aware of Defendant's breach of the Product's warranties.

65. Plaintiff provided or provides notice to Defendant, its agents, representatives, retailers, and their employees that it breached the Product's warranties.

66. Defendant received notice and should have been aware of these issues due to

complaints by third-parties, including regulators, competitors, and consumers, to its main offices, and by consumers through online forums.

67. The Product did not conform to its affirmations of fact and promises due to Defendant's actions.

68. The Product was not merchantable because it was not fit to pass in the trade as advertised, not fit for the ordinary purpose for which it was intended and did not conform to the promises or affirmations of fact made on the packaging, container, or label, because it was marketed as if its cough suppressant ability was based on the presence of the identified botanical ingredients, such as echinacea and green tea.

69. The Product was not merchantable because Defendant had reason to know the particular purpose for which the Product was bought by Plaintiff, because she expected that its cough suppressant ability was based on the presence of the identified botanical ingredients, such as echinacea and green tea, and she relied on its skill and judgment to select or furnish such a suitable product.

## Unjust Enrichment

70. Defendant obtained benefits and monies because the Product was not as represented and expected, to the detriment and impoverishment of Plaintiff and class members, who seek restitution and disgorgement of inequitably obtained profits.

## Jury Demand and Prayer for Relief

Plaintiff demands a jury trial on all issues.

 **WHEREFORE**, Plaintiff prays for judgment:

1. Declaring this a proper class action, certifying Plaintiff as representative and the undersigned as counsel for the class;
2. Awarding monetary, statutory and/or punitive damages and interest;

3. Awarding costs and expenses, including reasonable fees for Plaintiff's attorneys and experts; and

4. Other and further relief as the Court deems just and proper.

Dated: December 7, 2022

Respectfully submitted,

/s/ Spencer Sheehan
Sheehan & Associates, P.C.
60 Cuttermill Rd Ste 412
Great Neck NY 11021
(516) 268-7080
spencer@spencersheehan.com